IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WARREN CANNADA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:20-cv-952–HEH |
| | ) |
| OLD DOMINION BRUSH, | ) |
| COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
**(Denying Defendant's Motion for Summary Judgment)**

This case arises out of the termination of Warren Cannada ("Plaintiff" or "Cannada"), a 60-year-old employee of Old Dominion Brush Company, Inc. ("Defendant" or "ODB"). Cannada alleges that ODB terminated him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). ODB disagrees and instead states that it terminated Cannada because of his poor performance.

Currently before the Court is Defendant's Motion for Summary Judgment (the "Motion") filed on September 3, 2021. (ECF No. 19.) The parties have submitted memoranda supporting their respective positions. The Court heard oral argument on October 22, 2021, and the Motion is now ripe for review. Defendant argues that the evidence indisputably shows that Plaintiff did not meet ODB's legitimate expectations before being terminated and that ODB's reasons for terminating Plaintiff were not pretextual. Plaintiff argues that a factual dispute exists as to both issues. For the reasons stated below, the Court will deny Defendant's Motion for Summary Judgment.

## I. STANDARD OF REVIEW

Pursuant to Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 Fed. App'x 164, 166 (4th Cir. 2019). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor. *Anderson*, 477 U.S. at 248.

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must

be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate . . . ." *Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). "[T]here must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Anderson*, 477 U.S. at 249–50). When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence. *Holland*, 487 F.3d at 213.

## II. BACKGROUND

As required, the Court resolves all genuine disputes of material fact in favor of the nonmoving party and disregards immaterial factual assertions. *Anderson*, 477 U.S. at 248, 255. Applying this standard, the Court concludes that the following narrative represents the facts for purposes of resolving Defendant's Motion.

Cannada was born on January 10, 1959 and was 60 years old during the events at issue. (Pl.'s Ans. to Interrog. ¶ 1, Def.'s Ex. 1.)[1] ODB hired him to operate a punch press and press brake in 1988. (Cannada Dep. 13:21–14:17, Def.'s Exs. 2, 36 and Pl.'s

---

[1] The Court takes all background facts from the parties' exhibits. All of Defendant's exhibits were attached either to its Memorandum in Support (ECF No. 20) or Reply Brief (ECF No. 27) and are numbered continuously across both filings. Plaintiff's exhibits were attached to its Memorandum in Opposition. (ECF No. 23.) In some circumstances, the parties filed parts of the same document or deposition as separate exhibits. The Court will reference all exhibit numbers in those instances.

3

Ex. 1.) After a series of promotions, he become a "lead man" at ODB. (*Id.* 14:18–23.) On June 27, 2017, Alamo Group, Inc. ("Alamo") purchased ODB. (Answer ¶ 15, ECF No. 14.) After the purchase, Cannada became the Welding and Fabrication Supervisor. (Cannada Dep. 27:11–23.) He reported to the Operations Manager, Kevin Davis. (*Id.* 30:7–13.) Britt Calloway replaced Davis as the Operations Manager on August 30, 2019 and became Cannada's new direct supervisor. (Calloway Dep. 14:10–11, Def.'s Ex. 6, 35 and Pl.'s Ex. 5.)

On November 4, 2019, ODB terminated Cannada's employment. (Cannada Dep. 95:14–96:3.) Calloway, ODB's Human Resources ("HR") Manager Kitty Carracedo, ODB's Acting President Howard May, and Alamo's corporate HR Representative Tim Harding (collectively the "decisionmakers") made the final decision to terminate Cannada.[2] In its Termination Notice, ODB states that it dismissed Cannada for "poor performance" stemming out of 6 incidents. (Term. Notice, Def.'s Ex. 25.) The key issue in this case is whether these 6 incidents were legitimate grounds or only served as a pretext to dismiss Cannada. The evidence pertaining to each incident is discussed below.

First, on September 23, 2019, an employee in Cannada's Department sustained an injury on the job. (Cannada Dep. 47:11–48:15; Ex. 10.) ODB issued a Written Warning to Cannada stemming out of this accident on September 24, 2019, admonishing Cannada that (1) his department suffered from a complacent safety attitude as exhibited by the two

---

[2] (Calloway Dep. 48:14–18; Carracedo Dep. 236:21–237:5, Def.'s Exs. 3, 37 and Pl.'s Ex. 2; May Dep. 19:3–14, Def.'s Exs. 4, 40 and Pl.'s Ex. 10; Harding Dep. 19:21–20:2, 69:12–70:24, Def.'s Ex. 8 and Pl.'s 11.)

4

injuries and one near miss in his department and Cannada's lack of floor presence;³ (2) employees, including Cannada, were not wearing proper personal protective equipment ("PPE"); (3) Cannada had not been reporting the inspections of his overhead cranes; and (4) Cannada had not properly developed a corrective plan after the September 23 injury. (1st Written Warning, Def.'s Ex. 13; *see* Term. Notice.) The Written Warning included a list of improvements to complete including a request that Cannada "[r]eview safety audit and develop a plan to correct issues in [the] department by [November 15, 2019]." (*Id.*)

On September 30, 2019, Cannada's supervisor, Calloway, met with Cannada to discuss his response to the Written Warning. (Def.'s Ex. 14; Term. Notice.) After the meeting, Calloway relayed to HR that Cannada had increased his floor presence and focus on safety issues, ordered everyone to properly wear PPE, executed a corrective plan for the September 23 injury, and reported the overhead crane inspections properly. (*Id.*) Calloway concluded that Cannada was "taking this coaching to heart" and was "very coachable" but would "require a considerable investment of time." (*Id.*) Cannada had shown "improvement" and Calloway wanted to be sure that he continued to progress. (Calloway Dep. 82:2–85:15.) Calloway gave Cannada a deadline of November 15, 2019 to further improve safety in his department based on these issues. (1st Written Warning.) Between the September 30 meeting, however, Cannada's improvements in safety generally diminished (Calloway Dep. 95:21–97:9), and ODB terminated Cannada on

---

³ Cannada disputes that his department had two injuries before the September 23 accident and cites to evidence that his department only had one injury and one near miss. (Pl.'s Ex. 6.) Thus, to the extent that this fact is material, Cannada's department only had one injury and one near miss up to this point.

5

November 4, 2019 so his safety performance was never reassessed at the November 15, 2019 deadline (Term. Notice).

Second, Calloway provided Cannada with a skills matrix on September 27, 2019 and expected it to be completed within a week, but never communicated a deadline to Cannada. (Calloway Dep. 66:21–67:13.; Pl.'s Ex. 32.) The skills matrix is a spreadsheet that records the productivity of the employees in Cannada's department. (*Id.*) Cannada completed 90% of the skills matrix but never returned it to Calloway. (Cannada Dep. 63:15–65:8; Term. Notice.)

Third, on October 7, 2019, Calloway instructed Cannada to tell Ryan Carlton, a welder in Cannada's department, to be more productive but not mention that the feedback originally came from Calloway. (Cannada Dep. 92:25–93:13; *see* Pl.'s Ex. 13.) After receiving the feedback, Carlton, guessing that the feedback truly came from Calloway, confronted him about it. (*Id.*) ODB concluded that Cannada did not handle the situation "using best practices."[4] (Term. Notice.)

Fourth, Jose Leveron, an employee in Cannada's department, injured his hand at ODB early in the morning on October 11, 2019. (Def.'s Ex. 15 at 1.) After Leveron reported the injury to Cannada, they both went to HR. (*Id.*) There, Karen Canas, ODB's HR Assistant, gave them paperwork to fill out and advised that the nearest medical facility was a MedExpress. (*Id.* at 3.) Leveron noted that he preferred to go to Chippenham Hospital. (*Id.*) Cannada said that he could drive Leveron to the

---

[4] ODB likely came to this conclusion because Calloway assumed Cannada did not follow his instructions and told Carlton where the feedback came from when Carlton confronted him. (Cannada Dep. 92:25–93:13.)

6

MedExpress near ODB's location but did not wish to drive him to Chippenham Hospital, which was farther away. (*Id.*) Canas sought out Calloway and another supervisor to drive Leveron instead but could not reach them. (*Id.*) Canas asked Leveron if he would be willing to drive himself and Leveron agreed because he was not in much pain. (*Id.*) Leveron signed a waiver stating that he agreed to drive himself. (Carracedo Dep. 240:24–241:7.) ODB concluded that Cannada "did not act in the best interest of the employee or the company by refusing to accompany the injured employee for medical treatment." (Term. Notice.)

The fifth incident occurred later on October 11, 2019. (Term. Notice.) After Calloway had learned of the injury, he asked Cannada and Carlton about Leveron's status. (Calloway Dep. 97:13–98:25.) Carlton, in an accent presumably to mock Leveron, reported that Leveron's hand was hurt badly. (*Id.*) Cannada denies laughing at Carlton's statement or mock accent. (Cannada Dep. 81:14–16.)[5]

Emails between Carracedo, Calloway, and May detail confusion about Leveron's injury and Cannada's management of it in the immediate aftermath. (Def.'s Exs. 16–20.) Once the dust settled, Calloway wished to fire Cannada for refusing to drive Leveron to Chippenham Hospital and chuckling at Carlton's statement. (Def.'s Ex. 16.) Carracedo thought that Cannada should receive a final warning instead of termination because the incident was "a teachable moment." (Def.'s Ex. 20 at 1.) She also thought that Cannada did not violate a policy because "there isn't one that addresses this specifically." (Def.'s

---

[5] Calloway claims Cannada chuckled after this statement either because he found Leveron's injury funny or the mock accent funny. (Calloway Dep. 171:7–172:1; *see* Term. Notice.)

7

Ex. 17.) Carracedo stated that the Leveron incident, alone, was not enough to fire Cannada. (Carracedo Dep. 87:7–10.) ODB's Safety Training Materials state that a manager, like Cannada, must "arrange transportation to the panel provider selected by the employee." (Safety Training Mat., Def.'s Ex. 7 at 9.) Carracedo agrees that this policy allows for an employee to drive himself. (Carracedo Dep. 240:10–241:7.) However, Calloway believes Cannada should have driven Leveron to the medical facility. (Calloway Dep. 109:14–25.)

Lastly, the sixth incident occurred on October 21, 2019, when Canas asked Cannada about the status of an applicant for a job with ODB that Cannada had previously interviewed. (Def.'s Ex. 33; Term. Notice.) Cannada responded that he was waiting on the response from one of the applicant's references. (*Id.*) In a follow up, Canas reminded Cannada that HR conducted reference checks, not him. (*Id.*) Cannada does not remember calling any reference. (Cannada Dep. 86:16–87:25.) ODB concluded that Cannada "personally checked references for [the interviewee], knowing that [ODB has] a process in place that everyone must follow regarding hiring practices."[6] (Term. Notice.)

While all six of these incidents are listed in the Termination Notice, some decisionmakers focused on a select group as the reason for termination. Carracedo focused on the reference incident. (Carracedo Dep. 157:13–25, 159:16–19.) Calloway focused on the safety incidents, the Leveron incident, the laughing incident, and the skills matrix incident. (Calloway Dep. 172:13–21; 184:17–23.) May focused on the Leveron

---

[6] Carracedo claims that Cannada did call the reference and that she had to deal with fallout from that call. (Carracedo Dep. 140:25–143:14.)

incident. (May Dep. 40:1–10.) After ODB terminated Cannada, it promoted Josh Coker, age 34, to fill Cannada's position. (Calloway Dep. 216:15–21.)

### III. DISCUSSION

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 923(a)(1). A plaintiff may prove age discrimination occurred through two methods. *Holland*, 487 F.3d 208, 213 (4th Cir. 2007). He can show direct evidence, a proverbial smoking gun, that discrimination motivated his employer's actions, *id.*, but such evidence is rare. Recognizing this, the plaintiff may also prove discrimination under the *McDonnell Douglas* framework. *Id.* at 214; *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006) (applying *McDonnell Douglas* to an ADEA claim). Without any direct evidence of discrimination, Plaintiff proceeds under *McDonnell Douglas*.

At the summary judgment stage, *McDonnell Douglas* requires a plaintiff to demonstrate a prima facie case of discrimination through presenting evidence that (1) he is part of a protected class; (2) he was discharged; (3) he was meeting his employer's legitimate expectations; and (4) he was replaced by a substantially younger person with comparable qualifications. *Warch*, 435 F.3d at 513–15 (where employee was discharged, focus should be on employer's expectations rather than employee's qualifications); *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996); *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981). After the plaintiff proves a prima facie case, the employer must produce "a legitimate, non-discriminatory reason for the

9

termination." *Id.* at 513–14. If the employer produces such a reason, then the "presumption of discrimination created by the prima facie case disappears" and the plaintiff must prove that the employer's reason is pretextual. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004); *Warch*, 435 F.3d at 514. Courts should apply the *McDonnell Douglas* framework flexibly and remember that it is not the law but "meant only to aid courts and litigants in arranging the presentation of evidence." *Warch*, 435 F.3d at 517 (quoting *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 986 (1988)). In cases where an employer fired the employee for poor performance, there is a real danger that the legitimate expectations prong of the prima facie case may be applied "too strictly" and result "in the premature dismissal of potentially meritorious claims of unlawful discrimination." *Id.* at 516. Even so, an employer's reasons for termination can be considered both at the prima facie stage and the pretextual stage of *McDonnell Douglas*.[7] *Warch*, 435 F.3d at 516–517.

Here, the facts mirror *Warch* in that Plaintiff was dismissed for poor performance. Thus, the Court exercises caution in evaluating the evidence at the summary judgment stage. In its Motion, Defendant asserts that Plaintiff cannot prove that he was meeting his

---

[7] Some courts have merged the legitimate expectations prong with whether the employer's reasons for termination were pretextual in similar cases. *Hudock v. Kent Cty. Bd. of Educ.*, No. CCB-14-2258, 2015 WL 1198712, at *10 (D. Md. Mar. 16, 2015); *see Brummett v. Lee Enters, Inc.*, 284 F.3d 742, 745 (7th Cir. 2002); *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir.1996). The Court notes that a merged analysis may be proper here too but will refrain from doing so because a merged analysis has not been employed directly by the Fourth Circuit.

employer's legitimate expectations, the third element of a prima facie case, nor can he show that Defendant's reasons for terminating him were pretextual.[8]

Viable evidence that an employer's expectations were met can include concessions from the employer, prior satisfactory performance reviews, expert testimony concluding that the employee did meet expectations, or evidence that the employer's expectations were not legitimate. *Pettis v. Nottoway Cty. Sch. Bd.*, 980 F. Supp. 2d 717, 727 (E.D. Va. 2013); *Warch* 435 F.3d at 514 (noting that plaintiff may show that expectations are not legitimate). Plaintiff cites various points in the record where the decisionmakers concede that Cannada met their expectations.[9] Calloway's September 30 statement, that Plaintiff was making improvements, is some evidence that Plaintiff was meeting ODB's legitimate expectations. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (holding that an employer's positive statement three weeks before termination was enough to dispute whether the employee met legitimate expectations).[10] Calloway again

---

[8] Defendant does not challenge the sufficiency of the evidence on the other three elements of Plaintiff's prima facie case. Cannada was born in January 1959 and was 60 years old during the relevant events. (Pl.'s Ans. to Interrog. ¶ 1.) ODB discharged Cannada. (Term. Notice.) Josh Coker, born in June 1985 and 34 years old during the events (Coker Dep. 6:12–13, Def.'s Exs. 11, 38 and Pl.'s Ex. 4) replaced Cannada after his termination (Calloway Dep. 216:15–21).

[9] Plaintiff also argues that he met Defendant's expectations because he received no negative performance reviews before September 2019 and received multiple salary increases. But those arguments miss the point. The question is whether Plaintiff met ODB's expectations close to the time of his termination, not years or even a few months prior. *Warch*, 435 F.3d 510, 516–517; *Lovelace v. Sherwin-Williams Co.*, 681 F.3d 230, 244 (4th Cir. 1982); *O'Connor v. Consol. Coin Caterers Corp*, 56 F.3d 542, 547 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996); *Diamond v. Bea Maurer, Inc.*, 128 F. App'x 968, 973 (4th Cir. 2005). Evidence of his past salary increases or good performance months before termination is, therefore, not material to Defendant's Motion.

[10] The Court should note that Calloway's opinion of Plaintiff's performance is only relevant because Calloway was Plaintiff's supervisor and contributed to the decision to terminate him.

11

confirmed during his deposition that he had positive opinions of Cannada's performance around September 30. (Calloway Dep. 82:2–85:15.) Carracedo's statement that the Leveron incident alone did not constitute a dischargeable offense is further evidence that Cannada was possibly meeting ODB's legitimate expectations. (Carracedo Dep. 87:7–87:10.) Relatedly, ODB's policy only requires a supervisor to "arrange" transportation when an employee gets hurt. (Safety Training Mat. at 9.) A reasonable jury could interpret this to mean that Cannada did not necessarily need to drive Leveron after his accident and, in fact, fulfilled the policy since Leveron willingly drove himself. As to the reference incident, while Carracedo claims Plaintiff improperly called a reference, Plaintiff refutes that.[11] (Cannada Dep. 86:16–87:25.) Therefore, there is a genuine dispute as to many facts relevant to whether Plaintiff met Defendant's legitimate expectations and summary judgment is not proper at this stage.

After Plaintiff has proven his prima facie case, Defendant must put forward a legitimate nondiscriminatory reason for Plaintiff's termination. *Warch*, 435 F.3d at 513–14. This is merely a burden of production, not one of persuasion, and the Court is not to

---

Plaintiff cites to the opinions of other coworkers who were not his supervisor nor part of the decision to fire him. The opinions of those coworkers are not material to what ODB's legitimate expectations are. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). For similar reasons, Coker's statements that he was effectively doing many parts of Cannada's job is immaterial since Coker was Cannada's subordinate and not his supervisor. (Coker Dep. 42:23–43:16.)

[11] Defendant argues that Plaintiff's testimony cannot be used to create a genuine dispute of fact and avoid summary judgment. Defendant is correct that Plaintiff's *opinions* on what Defendant's expectations ought to be are not material. *King*, 328 F.3d at 149 (holding that Plaintiff's own assessment of his performance is not relevant). Plaintiff's factual assertions as to what occurred, however, certainly are material. *Holland*, 487 F.3d at 215 (accepting employee's denial of facts as true at summary judgment stage).

question the credibility of Defendant's reasons. *Id.*; *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (holding that defendant met his burden where he offered admissible evidence of a nondiscriminatory reason). Defendant offers six nondiscriminatory reasons for terminating Plaintiff in the Termination Notice.

After Defendant proves his prima facie case, the sole remaining issue becomes that of intentional discrimination. *Reeves*, 530 U.S. at 142–43. In attempting to prove intentional discrimination, Plaintiff may show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (quoting *Burdine*, 450 U.S. at 253). A plaintiff can show pretext through evidence that the employer's reasons for "termination are inconsistent over time, false, or based on mistakes of fact." *Haynes*, 922 F.3d at 225 (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)). Evidence that an employee's termination was "an extreme overreaction" given the circumstances may also prove pretext. *Westmoreland*, 924 F.3d at 728; *see Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011).[12] Most importantly, evidence establishing a "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148;

---

[12] This does not mean that mere evidence that an employer's decision was unwise or imprudent would prove pretext. *Westmoreland*, 924 F.3d at 728 n. 4. The ADEA does not allow the Court or a jury to sit in judgment as a "super-personnel department." *Id.* (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Notwithstanding that, an employer's justification for terminating an employee may be "so flimsy as to be *untrue or implausible*" and thus reveal itself as an attempt to mask a discriminatory motive. *Id.*

*Sears Roebuck & Co.*, 243 F.3d at 842. This is because "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 143.[13]

Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant's reasons for terminating him were pretextual. As detailed above, Plaintiff has proven his prima facie case. As to pretext, Plaintiff offers much evidence to bring Defendant's reasons for the termination into question. Calloway, Cannada's direct supervisor, complimented Cannada's progress in addressing safety issues on September 30, 2019. (Def.'s Ex. 14; Calloway Dep. 82:2–85:15.) Cannada's original Disciplinary Action Notification also gave him until November 15, 2019, to improve safety in his department but instead he was terminated on November 4, 2019.[14] (Def.'s Ex. 13.) This evidence creates a genuine dispute as to whether Cannada's handling of general safety concerns was truly egregious enough to prompt immediate termination. *See Westmoreland*, 924 F.3d at 728.

As to the Leveron incident, which most of the decisionmakers focus on, Cannada, Leveron, and Canas's statements after the incident all say that, while Cannada did refuse to drive Leveron to Chippenham Hospital, Leveron willingly agreed to drive himself.

---

[13] However, "there will be instances where, although the plaintiff has established a prima facie case and introduced sufficient evidence to reject the employer's explanation, no rational factfinder could conclude that discrimination had occurred." *Id.* at 138. Even so, a case like this one, with complex and disputed facts, is exactly the sort of case that a jury should decide instead of the Court.

[14] Defendant argues that the November 15, 2019, deadline only applied to Cannada's review of the safety audit, but, taking the evidence in the light most favorable to Plaintiff, the Court believes the deadline applied to the general instructions to improve safety in his department.

(Def.'s Ex. 15 at 1–3.) Moreover, ODB's policy does not seem to require a supervisor to drive their employee to a medical facility, but only to "arrange transportation" to the facility. (Safety Training Mat. at 9.) Taking this policy in the light most favorable to Plaintiff, Cannada was only required to make sure Leveron could get to a medical facility safely and was not required to drive him himself. Additionally, Carracedo stated that the Leveron incident "was a teachable moment" and later confirmed that she did not believe it was adequate grounds for termination. (Def.'s Ex. 20; Carracedo Dep. 87:7–10.)

Furthermore, Cannada denies ever chuckling about Leveron's injury or his accent. (Cannada Dep. 81:14–16.) Carracedo did not think the chuckling was grounds to terminate Cannada. (Carracedo Dep. 89:17–24.) With so much about the Leveron incident in question, the trier of fact could reasonably believe that ODB's stated reason for Cannada's firing is "unworthy of credence," *Reeves*, 530 U.S. at 143, or at least an "overreaction," *Westmoreland*, 924 F.3d at 728. Regarding the feedback incident, Cannada denies ever telling Carlton who the feedback came from. (Cannada Dep. 93:6–19.) On the reference incident, Cannada denies ever calling any reference at all.[15] (Cannada Dep. 86:16–87:25.)

Moreover, while these incidents are listed in the Termination Notice, many of the decisionmakers failed to mention their importance in their depositions. While Carracedo stresses the importance of the reference incident, May, Harding, and Calloway never

---

[15] Defendant argues that if Cannada never called anyone about a reference, then his earlier email to Canas must have been a lie and, therefore, Cannada lied to his employer. This argument is irrelevant, however, because lying was not one of ODB's nondiscriminatory reasons for terminating Cannada.

mention it. (*See* Carracedo 138:12–143:15.) Similarly, while Calloway finds the feedback incident important, none of the other decisionmakers note it as a reason for terminating Cannada. (Def.'s Ex. 22 at 3.) If the decisionmakers' testimony at trial were to match their depositions, a jury could reasonably infer that, because May and Harding never mentioned the feedback or reference incident, they found them unimportant and they were not the true reasons for Cannada's termination.

Thus, of the six reasons that ODB offers for Cannada's termination, Plaintiff offers some evidence that five are "false" or "unworthy of credence." *Reeves*, 530 U.S. at 143. The sixth undisputed reason is that Cannada did not return the skills matrix to Calloway in a timely manner. However, a jury could infer that this sixth reason alone would not have compelled the decisionmakers to terminate Cannada, as he was terminated because of the culmination of all six reasons. (*See* Term. Notice.)

Plaintiff points to the treatment of comparable employees at ODB to prove pretext as well. Plaintiff notes that his replacement, Josh Coker, is substantially younger than Cannada. (Coker Dep. 6:12–13.) The fact that Coker replaced Cannada is an element of Cannada's prima facie case but may also be used to prove pretext or discrimination. *Reeves*, 530 U.S. at 143; *Burdine*, 450 U.S. at 255 n.10. Up to this point, the Court believes Plaintiff has shown that there is a genuine issue of material fact as to whether ODB's reasons for terminating Cannada were pretextual. Thus, the Motion for Summary Judgment will be denied.

However, the Court would be remiss if it did not point out other pieces of evidence that Plaintiff relies on to prove pretext that *are not* material. First, Plaintiff notes that

16

some younger workers of Defendant were not punished or reprimanded in the same way he was. He notes, for example, that Carlton was not reprimanded for mocking Leveron's accent or injury. (*See* Calloway Dep. 172:3–4, 193:10–194:10.) Comparators can serve as good evidence of pretext. *Laing v. Federal Express Corp.*, 703 F.3d 713, 719–29 (4th Cir. 2013).

To be helpful, however, there must be evidence that the comparator and the plaintiff "dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes*, 922 F.3d at 223–24 (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). Carlton is not a valid comparator because he did not have the same supervisor as Cannada. (Pl.'s Ex. 16 at 3.) Moreover, there are differentiating circumstances that distinguish Trumaine Payne and Coker from Cannada such that they are not valid comparators.[16] (*See* Carracedo Dep. 186:8–188:8, 188:9–189:18.)

Second, Plaintiff notes that Defendant's shifting reasons for firing Plaintiff, regardless of whether those reasons were factually false or not, is probative evidence of pretext. (Def.'s Exs. 16 at 4, 23 at 2; Term. Notice.) It is true that an employer's shifting or inconsistent reasons for terminating an employee may help prove pretext. *Haynes*, 922 F.3d at 225. While evidence that an employer's reasons changed post-termination may constitute stronger evidence of pretext, shifting reasons pre-termination can also be

---

[16] Payne and Coker's treatment might be tangentially relevant to the genuineness and consistency of ODB's concerns about safety in the workplace. For the purposes of this opinion, however, the Court does not rely on any evidence relating to Payne and Coker's treatment.

considered. *Id.*; *Sears Roebuck & Co.*, 243 F.3d at 853 (collecting cases without specifying whether differing reasons occurred before or after the employee's discharge). However, minor changes in an employer's reasoning, whether pre or post-termination cannot create an inference of pretext. *Mercer v. Arc of Prince George*, 532 F. App'x 392, 399 (4th Cir. 2013) (finding that, though examples and phrasing of reasons had changed, employer had stuck to the same overall reason for dismissing employee). Here, the small changes in wording and reasons between ODB's draft disciplinary action notifications leading up to Cannada's termination do not evidence any sort of pretext. While ODB changed the wording and exact examples, their reason for terminating Cannada stayed consistent: poor performance. *See id.*; (Term. Notice). And so, while evidence that ODB's reasons were false is evidence of pretext here, evidence that those plausibly false reasons shifted over time is not.

Finally, Plaintiff argues that Defendant terminated Plaintiff because of the cost savings of hiring a younger worker. While evidence shows that ODB did save money by replacing Cannada with Coker (Pl.'s Ex. 15), Plaintiff cites no evidence that Defendant knew of those cost savings or relied on them when deciding to terminate Cannada. Thus, that evidence is immaterial to the issue of pretext.

Even though the Court finds some of Plaintiff's proffered evidence immaterial to the pretext issue, the evidence that ODB's reasons for terminating Cannada are seemingly implausible or an overreaction, coupled with the fact that it hired a younger worker to replace Cannada, creates a genuine issue of material fact that should be settled by a jury.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (ECF No. 19) will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                                        /s/
                                 Henry E. Hudson
                                 Senior United States District Judge

Date: **Nov. 19, 2021**
Richmond, Virginia