IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WARREN CANNADA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:20-cv-952–HEH |
| | ) |
| OLD DOMINION BRUSH, | ) |
| COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**
**(Resolving Post-Trial Motions and Entering Judgment)**

In his Complaint, Plaintiff Warren Cannada ("Cannada") alleged that his former employer, Old Dominion Brush Company, Inc. ("ODB"), terminated him because of his age in violation of the Age Discrimination in Employment Act (the "ADEA"). (Compl., ECF No. 1.) After a four-day trial concluding on March 3, 2022, the jury announced a verdict for Cannada and awarded him $113,283.12 in back pay. (ECF No. 77.)

The Court is now tasked with resolving three post-trial motions filed by Cannada. First, Cannada's attorneys have filed a motion for attorneys' fees and costs pursuant to 29 U.S.C. §§ 216(b), 626(b). ("Motion for Fees & Costs," ECF No. 79.) Second, Cannada has moved for pre- and post-judgment interest and front pay. ("Motion for Interest & Front Pay," ECF No. 81.) Third, Cannada has asked for the Court to enter judgment on the jury verdict. (Motion for Entry of Judgment, ECF No. 83.) The Motion for Entry of Judgment can be dealt with expeditiously because the parties both agree that

entry of judgment under Federal Rule of Civil Procedure 54 is proper at this time. Consequently, the Court will grant the Motion for Entry of Judgment.

Regarding the Motion for Fees & Costs, the ADEA requires a court to award reasonable attorneys' fees and costs to any prevailing plaintiff. 29 U.S.C. §§ 216(b), 626(b); *EEOC v. Clay Printing Co.*, 13 F.3d 813, 817 (4th Cir. 1994). In determining the amount of fees and costs to award, the Court considers the reasonable number of hours expended on the case and the reasonable rate charged per hour. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). The factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), guide the Court's assessment as to the reasonableness of the fees and costs. *McAfee*, 738 F.3d at 88.

Cannada's lead attorney, Mr. James Thorsen, spent 223.24 hours on the case at a rate of $550.00 per hour. (Pl.'s Mem. Supp. Fees at 3, ECF No. 80.) His other attorney, Mr. Jesse Roche, spent 135.55 hours at $350.00 per hour. (*Id.*) Lastly, Mr. Thorsen's paralegal, Ms. Kim Maiden, spent 60.65 hours at $135.00 per hour. (*Id.*) In total, Cannada's attorneys ask for $178,412.25 in fees and an additional $5,611.37 in costs. (*Id.* at 1.) To justify the reasonableness of these amounts, Cannada's attorneys filed affidavits from themselves and other attorneys practicing in the Richmond metropolitan area. (*See* ECF Nos. 80-1–5.) ODB offers no specific arguments why Cannada's attorneys' fees or costs should be reduced, and the Court has not discovered any independently. Considering the evidence set forth in the memoranda, affidavits, and declarations, the outcome of this case, the legal issues involved, the experience of the attorneys, and the other *Johnson* factors, the Court finds that the fees and costs are

reasonable. *Johnson*, 488 F.2d at 717–19; *McAfee*, 738 F.3d at 88. The Court will grant the Motion for Fees & Costs and award Cannada's attorneys $178,412.25 in fees and $5,611.37 in costs.

Next, the Court considers Cannada's Motion for Interest & Front Pay. First, Cannada asks for post-judgment interest on his full award. Post-judgment interest at a rate published by the Federal Reserve is prescribed by statute. 28 U.S.C. § 1961. The parties agree that, pursuant to that statute, post-judgment interest is appropriate in this case. Thus, the Court will award post-judgment interest in accordance with 28 U.S.C. § 1961.

Cannada also asks for *pre*-judgment interest on his jury-awarded back pay. Unlike post-judgment interest, awarding pre-judgment interest on back pay in an employment discrimination case is within the discretion of the district court. *Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993). Yet, the United States Court of Appeals for the Fourth Circuit has cautioned against refusing to award pre-judgment interest in most cases. *Id.* ("A dollar tomorrow, unless interest is added, does not equal a dollar today."); *see Crump v. U.S. Dep't of Navy*, 205 F. Supp. 3d 730, 748 (E.D. Va. 2016). Generally speaking, pre-judgment interest should be awarded unless the back-pay award was not computed with certainty or the plaintiff did not timely request pre-judgment interest. *Crump*, 205 F. Supp. 3d at 748 (surveying other cases).

In this case, Cannada's back-pay award is certain and was agreed upon by the parties. Cannada also timely asked for pre-judgment interest to be included in his award. Thus, while the award of pre-judgment interest is discretionary, the Court sees no reason

why it should not award it here. Unlike the rate of post-judgment interest, "[t]he rate of pre-judgment interest for cases involving federal questions is a matter left to the discretion of the district court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993). Cannada asks for the Virginia statutory pre-judgment interest rate. (Pl.'s Mem Supp. Interest & Front Pay at 6, ECF No. 81); Va. Code Ann. § 6.2-302. Nonetheless, the Court finds it more appropriate to award pre- and post-judgment interest at the same rate. Therefore, the Court will award pre-judgment interest on Cannada's back-pay award according to the rate calculated in 28 U.S.C. § 1961.

Finally, Cannada asks for an award of front pay to supplement his back-pay award. The goal of any remedy under the ADEA is "to make the plaintiff whole." *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991). To that end, a front-pay award is appropriate where "intervening historical circumstances can make [reinstatement] impossible or inappropriate." *Id.* The parties and the Court agree that reinstating Cannada as an employee at ODB is inappropriate in this case, and thus, front pay could be awarded.

However, awarding front pay is entirely discretionary and "because of the potential for windfall, . . . its use must be tempered." *Id.* at 1424. Front pay should be awarded "to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment." *Id.* Moreover, considering "the broad array of potential circumstances of a terminated employee's future income makes any attempt at finding damages a speculative venture." *Id.* at 1423. Nevertheless, while there is no bright line or exact test for awarding front

4

pay, the Fourth Circuit has approved a list of factors for courts to consider. *Hunter v. Town of Mocksville, N.C.* (*Hunter II*), 897 F.3d 538, 563 (4th Cir. 2018).[1]

Working through those factors, the Court first considers Cannada's age, work expectancy, life expectancy, his intention to remain in the position, and his ability to work. *Id.* Cannada is now approximately 63 years old and, absent ODB's discrimination, would have worked until he was 66 years and 10 months old. (Cannada Decl. ¶¶ 2, 5, ECF No. 82-1.) There is no evidence that Cannada's life expectancy or inability to work would have shortened his working period. A plaintiff being closer to retirement weighs in favor of awarding front pay. *Hunter v. Town of Mocksville* (*Hunter I*), 291 F. Supp. 3d 750, 759 (M.D.N.C. 2016); *Duke*, 928 F.2d at 1423.

Next, the Court considers Cannada's length of employment, likelihood of staying with ODB, and related factors. *Hunter II*, 897 F.3d at 563. Cannada worked for ODB for almost 32 years before his termination. (Cannada Decl. ¶ 4.) However, on June 27, 2017, Alamo Group, Inc. ("Alamo") purchased ODB from the former owners. (Answer ¶ 15, ECF No. 14.) There was extensive evidence at trial that the expectations and the environment at ODB markedly changed after the Alamo purchase. Therefore, it is also important that Cannada only worked for two years under Alamo management. A shorter

---

[1] The factors in *Hunter II* include (1) the employee's age; (2) the length of their employment with the employer; (3) the likelihood that their employment would have continued absent the discrimination; (4) the length of time it would take the employee to secure comparable employment; (5) the employee's work and life expectancy; (6) the typical length other employees held the position; (7) the employee's at-will status; (8) the employee's ability to work; (9) the employee's subjective intention to remain in the position; and (10) the employee's mitigation of damages. *Id.*

period with the employer before termination weighs against awarding front pay because it makes an award more speculative. *Cf. Hunter I*, 291 F. Supp. 3d at 259.[2]

Relatedly, Alamo's new work environment makes it less likely that Cannada would have continued his employment absent the age discrimination. There was evidence at trial that Cannada was slow to adapt to Alamo's expectations at times. This is not to say that the Court doubts the jury's decision that Cannada was terminated because of his age. However, the Court cannot ignore the evidence that ODB, under Alamo management, was a changing workplace with new standards, practices, and expectations. The Court cannot predict whether Cannada would have lived up to those expectations or fallen short. *See Duke*, 928 F.2d at 1423 (recognizing that infinite factual circumstances could have occurred if a plaintiff was not terminated); *Hunter I*, 201 F. Supp. 3d at 759–60 (noting that an employee's status "trending downward" before the discrimination weighs against a front-pay award).[3]

---

[2] The parties do not present any evidence on how long other employees held positions similar to Cannada's. Thus, the Court cannot consider that factor in its analysis. *Hunter II*, 897 F.3d at 563.

[3] ODB argues that the Court can consider evidence of Cannada's poor performance at ODB leading up to his termination even though the jury found that ODB fired Cannada because of his age, not because of his performance. (Def.'s Mem. Opp'n at 3, ECF No. 84.) The Court disagrees. The jury listened to the evidence at trial and decided that ODB's reasons for terminating Cannada were unworthy of credence. The Court and the parties must accept that. ODB cites a few cases to support its position, but all are inapposite to the situation here. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361–62 (1995) (finding that *after-acquired* evidence of wrongdoing could be considered in awarding front pay); *Pudge v. Fruehauf Corp.*, 690 F. Supp. 692, 693–95 (N.D. Ill. 1988) (considering level of poor performance in awarding front pay under old legal standard that only required age to be *one of the reasons* for a plaintiff's termination and not *the reason*); *Ginsberg v. Burlington Indus., Inc.*, 500 F. Supp. 696, 699–701 (S.D.N.Y. 1980) (same). Therefore, the Court factors in evidence that Alamo's expectations of its employees were different, but not the specific evidence of Cannada's performance.

Further, Cannada was an *at-will* employee at ODB. (Def.'s Mem. Opp'n at 4.) ODB could have terminated him for any lawful reason during his employment. The Court cannot predict whether, in a hypothetical world where Cannada was not terminated because of his age, ODB would have lawfully terminated him two years later. Perhaps the pandemic would have triggered layoffs at ODB. Perhaps the company would have consolidated some of its manufacturing facilities or perhaps not. Again, Cannada's at-will status weighs against front pay because it contributes to the speculative nature of an award. *See Hunter I*, 201 F. Supp. 3d at 760.

Lastly, the Court considers the length of time it would take for Cannada to secure comparable employment and his mitigation of damages. *Hunter II*, 897 F.3d at 563. After being terminated in November 2019, Cannada applied to 38 jobs by May 2020. (Cannada Decl. ¶ 6.) In February 2020, he began working at Specialty's Our Name, Inc. ("SON"), as a punch press operator, and he plans to continue working there until retirement. (*Id.* ¶¶ 6, 7.) By applying to many positions and obtaining employment, Cannada reasonably mitigated his damages, and the parties agree that any front-pay award should be reduced by Cannada's salary at SON.

However, there is an important difference between Cannada's new position at SON and his old position at ODB. At ODB, Cannada was a supervisor with increased responsibility and a commensurate increased salary at $41.78 an hour. (*Id.* ¶ 4.) At SON, he is in a non-supervisory position making $20.50 an hour.[4] (*Id.* ¶ 7.) Based on

---

[4] Cannada did not offer any evidence on whether his hourly wage at SON is expected to increase before he retires or whether he might be eligible for a promotion. This additional uncertainty weighs against awarding front pay.

this, ODB argues that Cannada has not diligently sought out *comparable* employment, and that he merely seeks a windfall from a front-pay award. (Def.'s Mem. Supp. at 6.) In response, Cannada argues that no supervisory positions were available and that, despite the law, it is challenging for a person close to retirement to find another supervisory job. (Pl.'s Reply at 9, ECF No. 85.)

It is true that, of the 38 jobs that Cannada applied for between November 2019 and May 2020, only one was supervisory. (Pl.'s Interrog. ¶ 4, ECF No. 84-1 (listing application for a job as a production manager).) Moveover, Cannada has not presented any evidence that he has continued to apply for supervisory positions since May 2020. While the Court sympathizes with Cannada that supervisory positions can be hard to come by, as the saying goes "you miss one hundred percent of the shots you don't take." If Cannada truly intended to stay in a supervisory role like the one he had at ODB, he would be searching for such a job. Thus, the Court finds that Cannada's discontinued search for a comparable supervisory position weighs against an award of front pay.

Cannada asks for a front-pay award equal to the salary he would have received had he continued to work at ODB until full retirement, reduced by the amount he will make at his new job with SON. (Pl.'s Mem. Supp. at 4–5.) Such an award, covering almost 3 years and 9 months of work, would total $171,112.19.[5] (*Id.*) After examining all of the factors and mindful that any award of front pay is speculative, the Court finds that one

---

[5] Cannada calculated this figure by comparing his hourly wage at the end of his time at ODB and his hourly rate at SON. (*Id.*) He did not factor in any raises at either workplace, but he did include certain contributions that ODB would have made to his Group Life Insurance Policy. (*Id.*) While ODB contests that Cannada deserves any front pay at all, it does not contest Cannada's calculations of a possible front-pay award.

year of front pay, totaling $44,677.83, is more appropriate here. While Cannada is close to retirement and shows a strong intention to continue working, the Court cannot accurately predict how long he would have remained in his position at ODB absent the discrimination, given Alamo's preferred management style.

Furthermore, while Cannada applied for one supervisory position immediately after his termination, he has not shown a continued effort to find comparable employment. One of the goals of front pay is to "bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment." *Duke*, 928 F.2d at 1424. Cannada has already had approximately two and a half years to find a new supervisory role. An additional year is more than enough time for Cannada to obtain a supervisor position if he wants one. Therefore, the Court will award him $44,677.83 in front pay.

An appropriate Order will accompany this Memorandum Opinion.

                                                               /s/  
                                      Henry E. Hudson  
                                      Senior United States District Judge

Date: April 25, 2022  
Richmond, Virginia